# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NEPTUNE TECHNOLOGIES & BIORESSOURCES, INC., and L'UNIVERSITÉ DE SHERBROOKE, | ) ) ) ) | C.A. No. 1:09-cv-11946-MLW |
| Plaintiffs, | ) ) | PLAINTIFFS' OPPOSITION TO DEFENDANTS' SECOND MOTION |
| v. | ) ) ) | TO COMPEL PRODUCTION OF DOCUMENTS IN THE POSSESSION OF THE INVENTORS OF THE |
| AKER BIOMARINE ASA, AKER BIOMARINE ANTARCTIC AS, JEDWARDS INTERNATIONAL, INC., and VIRGIN ANTARCTIC LLC, | ) ) ) ) ) | PATENT-IN-SUIT |
| Defendants. | ) ) | |
| AKER BIOMARINE ANTARCTIC AS, JEDWARDS INTERNATIONAL, INC., and VIRGIN ANTARCTIC LLC, | ) ) ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| NEPTUNE TECHNOLOGIES & BIORESSOURCES, INC., and L'UNIVERSITÉ DE SHERBROOKE, | ) ) ) ) | |
| Counterclaim Defendants. | ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' SECOND MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN THE POSSESSION OF THE INVENTORS OF THE PATENT-IN-SUIT

## I.    INTRODUCTION

Plaintiffs respectfully submit this memorandum in opposition to Defendants' Second

Motion to Compel Production of Documents in the Possession of the Inventors of the Patent-in-

Suit ("Defendants' Motion").  Plaintiffs request that the Court deny Defendants' Motion because Plaintiffs have exercised diligence in seeking documents from the third party inventors, and already have produced all documents relevant to the claims and defenses in this case in the possession, custody, or control of those individuals.  As a result, Defendants' Motion is a waste of the Court's, the parties', and two third parties' time and resources.

## II.    FACTUAL BACKGROUND

Defendants' Motion seeks production of documents in the possession of the two named inventors of the '299 patent – Drs. Adrien Beaudoin and Geneviéve Martin.  These individuals are both third parties to this litigation.  Neither of them are currently employed by or have any current relationship with either Neptune Technologies & Bioressources, Inc. or L'Université de Sherbrooke.

Dr. Beaudoin formerly was a professor at L'Universite de Sherbrooke.  The work leading to the inventions of the '299 patent was completed more than ten years ago, while he was at the University.  However, he left the University in 2000, and since has gone on to other ventures.  (*See* Declaration of Jason H. Liss in Support of Plaintiffs' Opposition to Defendants' Second Motion to Compel Production of Documents in the Possession of the Inventors of the Patent-in-Suit ("Liss Decl."), Ex. A ("Beaudoin Dep."), at 25:13-16, 93:24-94:3.)

Plaintiffs sought to make contact with Drs. Beaudoin and Martin and to before Defendants' noticed their depositions, eventually learning (and informing Defendants) that both of the inventors were away on vacation for extended periods of time during the discovery period.  (*See* Dkt. No. 103, Plaintiffs' Response To Defendants' Motion To Compel Depositions, Production Of Documents, And Interrogatory Response And For Expedited Briefing, at 3-4, 8-9.)  Plaintiffs also asked that Dr. Beaudoin provide any relevant documents in his possession, and

Dr. Beaudoin initially informed Plaintiffs that he had no "documents relevant to this phase of the litigation" (*see* Memorandum in Support of Defendants' Second Motion to Compel Production of Documents in the Possession of the Inventors of the Patent-in-Suit ("Mem.") at 9).  Upon further inquiry, however, Dr. Beaudoin found some of his old lab notebooks.  Upon learning that, Plaintiffs promptly informed Defendants on August 12 that

> Mr. Beaudoin has informed us that he checked again whether he
> had any documents relevant to this litigation, and discovered that
> he still had in his possession certain lab notebooks which may
> contain information related to the '299 patent. Mr. Beaudoin is
> sending us these notebooks immediately, and we will produce
> them to the Defendants as soon as we receive them. Mr. Beaudoin
> has also confirmed that he does not have any other relevant
> documents.

(Liss Decl., Ex. B, 8/12/10 Letter from Sadaf R. Abdullah to Amanda Hollis.)  According to Dr. Beaudoin, he has no documents other than those laboratory notebooks relating to his work on the inventions.  (*See* Beaudoin Dep., at 159:21-160:3; *see also* Liss Decl., Ex. C, Declaration of Adrien Beaudoin ("Beaudoin Decl.").)

Dr. Martin's history with the University is even more attenuate.  She was a student there beginning in the mid-1990s, and began working in Dr. Beaudoin's lab in 1998 (*see* Liss Decl., Ex. D ("Martin Dep."), at 85:9-86:21), just two years before Dr. Beaudoin left the University. Dr. Martin obtained her graduate degrees elsewhere, and testified that it has been over a decade since she performed any work relating to lipids.  (Martin Dep., at 88:18-23, 91:10-14.)  Dr. Martin has been employed by the government of Québec since 2007.  (Martin Dep., at 83:21-84:25.)  Not surprisingly, given these circumstances, she no longer has any documents relating to her work with Dr. Beaudoin.  (Martin Dep., at 18:3-6; *see also* Liss Decl. Ex. E, Declaration of Geneviéve Martin ("Martin Decl.").)

3

III.    **DEFENDANTS' MOTION SHOULD BE DENIED AS MOOT.**

Plaintiffs have already collected and produced the responsive documents in the inventors'

possession.  Specifically, and as Defendants acknowledge, Plaintiffs produced 629 pages of Dr.

Beaudoin's laboratory notebooks reflecting his work on the invention of the '299 Patent.  (Mem.

at 3, 9; Declaration of Amanda J. Hollis in Support of Defendants' Second Motion to Compel

Production of Documents in the Possession of the Inventors of the Patent-in-Suit ("Hollis

Decl."), Ex. A, 9/8/10 Letter from Laura Shine to Amanda Hollis.)  Although Defendants

insinuate that there is something mysterious or improper about the fact that Plaintiffs initially

indicated that Dr. Beaudoin had no "documents relevant to this phase of the litigation" only to

later produce some of his old lab notebooks (*see* Memorandum in Support of Defendants'

Second Motion to Compel Production of Documents in the Possession of the Inventors of the

Patent-in-Suit ("Mem.") at 9), the facts actually demonstrate Plaintiffs' good faith in following

up further with Dr. Beaudoin to determine if relevant documents might exist and producing such

information.

Plaintiffs have never refused to search for or produce the inventors' documents, to the

extent they exist and are responsive to Defendants' requests for production (subject to Plaintiffs'

objections to those requests).  At issue, ultimately, is whether the inventors have any additional

such documents.  And despite deposing Dr. Beaudoin for a full day and Dr. Martin for half a day,

Defendants do not describe a single responsive document that they believe the inventors possess

but which they failed to produce.  Instead, they merely speculate without proper support that

"Beaudoin and Martin possess information that is relevant to the issue of whether the accused

krill oil manufacturing process infringes the claims of the patent . . . ."  (Mem. at 2 (citing Dkt.

No. 101, Memorandum in Support of Defendants' First Motion to Compel, at 13-14).)  The only

purported evidence Defendants offer for this assertion is their own memorandum submitted in support of their prior motion to compel, which likewise contained nothing more than the conclusory, unsupported assertion that such information must exist in the inventors' possession. (*See id.*) Indeed, given the fact that neither inventor has any ongoing relationship with either Plaintiff, and has not had such a relationship for some time, it is hard to understand why they would have information concerning the Defendants' infringement in their possession.

Defendants attempt to rely on selected portions of the deposition testimony of Dr. Beaudoin and Dr. Martin to suggest that they were not even asked to collect responsive documents and that Plaintiffs' assurances that such requests were made are not truthful. However, consideration of the full context of the inventors' testimony confirms what Plaintiffs have told Defendants repeatedly – the inventors were asked if they had any documents relating to this litigation and, to the extent they did, the documents were collected and produced.  It is true that, in response to Defendants' questioning, Dr. Beaudoin initially suggested that he had not been asked to search for documents.  However, after realizing that he had misunderstood the Defendants' question, he clarified:

> MS. ABDULLAH: Now, Ms. Hollis asked you – strike that. Let me ask this question.  Were you asked to look in your files for documents relevant to this case?
>
> DR. BEAUDOIN: Yes.
>
> MS. ABDULLAH: And did you do so?
>
> DR. BEAUDOIN: Yes. And I told that I had only two books, and this is it.
>
> MS. ABDULLAH: Earlier Ms. Hollis asked you whether you had been asked to collect documents. Do you remember that?
>
> DR. BEAUDOIN: Yes.

> MS. ABDULLAH: And you said that you had not been asked; right?
>
> DR. BEAUDOIN: No. I said that I didn't collect any papers or manuscript or literature pertinent to the case.
>
> MS. ABDULLAH: So when she asked you whether you collected documents, you thought she was referring to literature?
>
> DR. BEAUDOIN: Yes, yes.

(Beaudoin Dep., at 159:21-160:16.)[1]  Dr. Beaudoin also testified that his home had been

burglarized and that, to the extent he had additional documents, they may have been lost at that

time.  (*See* Beaudoin Dep., at 103:2-104:12.)  Similarly, Dr. Martin testified:

> Q. Okay. Were you ever asked to collect documents for this litigation?
>
> A. No. Actually, I was asked if I had any documents in my possession, and ***I don't have any***.

(Martin Dep., at 18:3-6 (emphasis added); *see also* Martin Decl.)[2]

As the record makes clear, far from attempting to resolve the purported dispute in good

faith, Defendants have taken an unreasonable stance unsupported by law or fact.  Plaintiffs have

made repeated attempts to assuage the Defendants' supposed concerns by describing the breadth

of the discovery requested from the inventors during the parties' lengthy teleconference on

September 24 and offering to revisit the issue with the inventors.  (*See* Liss Decl., Ex. F, 9/24/10

Letter from Sadaf R. Abdullah to Amanda Hollis.)  However, Defendants chose instead to file

---

[1] Defendants insinuate that Plaintiffs somehow improperly caused Dr. Beaudoin to change his testimony, but there is simply no basis for that inflammatory accusation.  Moreover, Dr. Beaudoin's declaration filed herewith confirms that he searched his records and found only his laboratory notebooks.  (*See* Beaudoin Decl.)

[2] Dr. Martin also testified that although she remembered searching for prior art to the '299 patent "a long, long time ago," she did not remember "finding anything relevant at the time."  (Martin Dep., at 28:17-29:11.)  Defendants do not explain their apparent theory that Dr. Martin should now possess documents that she was unable to find "a long, long time ago."

the instant motion.  In short, it is clear that this motion is nothing more than a misguided attempt

by Defendants to manufacture a dispute where none exists.

## **CONCLUSION**

For the reasons given, Plaintiffs respectfully request that the Court deny Defendants'

Second Motion to Compel Production of Documents in the Possession of the Inventors of the

Patent-in-Suit.

Respectfully submitted,

NEPTUNE TECHNOLOGIES &
BIORESSOURCES, INC., and
L'UNIVERSITÉ DE SHERBROOKE,

by their attorneys,

/s/ Mark G. Matuschak
Mark G. Matuschak
Hollie L. Baker
Vinita Ferrera
Lawrence P. Cogswell III
Jason H. Liss
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Sadaf R. Abdullah
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8000

October 8, 2010

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the Electronic Case Filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants on October 8, 2010.

/s/ Jason H. Liss
Jason H. Liss

8