# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEPTUNE TECHNOLOGIES & BIORESSOURCES, INC., and L'UNIVERSITÉ DE SHERBROOKE, <br><br> Plaintiffs, <br><br> v. <br><br> AKER BIOMARINE ASA, AKER BIOMARINE ANTARCTIC AS, JEDWARDS INTERNATIONAL, INC., and VIRGIN ANTARCTIC LLC, <br><br> Defendants. | Case No. 1:09-cv-11946-MLW <br><br> REQUEST FOR ORAL ARGUMENT |
| AKER BIOMARINE ANTARCTIC AS, JEDWARDS INTERNATIONAL, INC., and VIRGIN ANTARCTIC LLC, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> NEPTUNE TECHNOLOGIES & BIORESSOURCES, INC., and L'UNIVERSITÉ DE SHERBROOKE, <br><br> Counterclaim Defendants. | |

**AKBM ANTARCTIC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PRECLUDE RELIANCE ON UNTIMELY PRODUCED <u>DOCUMENTS AND EXPERT TESTIMONY</u>**

Realizing, or perhaps finally admitting, that they lacked any basis for their claims against Defendants (collectively "AKBM Antarctic"), Plaintiffs Neptune Technologies & Bioressources, Inc. and L'Université de Sherbrooke (collectively "Neptune") have ignored this Court's scheduling and discovery orders in a last-ditch effort to conjure up an evidentiary basis to maintain this litigation. Specifically, Neptune, without any good cause or justification, has produced new test results, selected documents, and a supplemental expert report more than three months after the close of discovery, two months after the close of expert discovery, and between three and five weeks after AKBM Antarctic filed its Renewed Motion for Summary Judgment. It is clear that Neptune's surprise post-eleventh-hour production is both prejudicial and unjustified, and its half-hearted attempts at remedying its blatant disregard for deadlines with expensive, last minute depositions and additional selected production fall well short of rectifying the prejudice to AKBM Antarctic.

Accordingly, as provided for in Rule 16(f) and, Rule 37(c) of the Federal Rules of Civil Procedure, Neptune should be precluded from relying upon its multiple untimely productions in its summary judgment briefing, and any reference to its new production should be stricken from Neptune's opposition to AKBM Antarctic's Renewed Motion for Summary Judgment. Additionally, the Court should order Neptune to pay monetary sanctions to AKBM Antarctic to cover its expenses associated with taking depositions and use of expert witness time that resulted from Neptune's untimely productions.

I.   **Factual Background**

This Court's Scheduling Orders clearly established that fact discovery ended on September 17, 2010, that Expert discovery closed on November 17, 2010, and that the deadline to file motions for summary judgment was December 7, 2010. D.E. 113 (Order); D.E. 145 (Order). And this Court specifically ordered that, after the November 17, 2010 deposition of Dr.

2

Daniel Raben, "[n]o other discovery shall be conducted except by agreement of the parties." D.E. 145 (Order). Neptune, who continues to play games with discovery, has now produced five different sets of documents well after the discovery deadline:

1. On December 29, 2010, Neptune produced documents labeled NEP_AKBM00001338–1485, which included documents relating to testing of MegaRed capsules (containing Superba™ Krill Oil) conducted by Garmen Laboratories ("Garmen") on November 8–12, 2010, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████; Shiels Decl., Ex. B (12/29/2010 Ltr. from Liss to Shiels). Neptune had at least some of these documents for years, and had the results of the Garmen testing since November 18, 2010. *See* Shiels Decl., Ex. C (Gauthier Dep. Tr.) at 20:9–21. In response to this first untimely production, AKBM requested that Neptune immediately produce all additional unproduced tests of both Superba™ Krill Oil ████████, and all documents relating thereto. *See* Shiels Decl., Ex. D (1/4/2011 Ltr. from Shiels to Fererra); Shiels Decl., Ex. E (1/6/2011 Ltr. from Shiels to Fererra); Shiels Decl., Ex. F (1/10/2011 Ltr. from Shiels to Fererra). Additionally, AKBM Antarctic requested depositions of (1) the scientist at Garmen who conducted the tests; (2) Marie-Eve Gauthier, ████████████████████████████████████████ (3) Dr. Bradley Moore, Neptune's expert. *See id.* Neptune refused, and continues to refuse, to produce most of the documents requested by AKBM Antarctic, and the parties ultimately agreed that depositions would be taken if the scope of said deposition was limited to cover only topics raised by the December 29

Production.  Shiels Decl., Ex. G (1/5/2011 Ltr. from Ferrera to Shiels); Shiels Decl., Ex. H (1/10/2011 e-mail corresp. between Shiels and Liss); Shiels Decl., Ex. I (1/13/2011 e-mail corresp. from Shiels to Liss); Shiels Decl., Ex. J (1/13/2011 e-mail corresp. from Abdullah to Liss).

2. On January 11, 2011, Neptune produced documents labeled NEP_AKBM0001486–1502. *See* Shiels Decl., Ex. K (1/11/2011 e-mail corresp. from J. Liss to counsel). ■

■

■

3. On January 13, one day before AKBM Antarctic took the deposition of a witness from Garmen (Amine Allami)[1] and ■ ■ (Marie-Eve Gauthier), Neptune produced documents identified as NEP_AKBM0001503–1507. *See* Shiels Decl., Ex. L (1/13/2011 3:52 pm e-mail corresp. from J. Liss to counsel).  This production included an order form from Neptune for the November 8–12 testing, as well as a new order form dated January 5, 2011 and three new certificates of analysis purporting to relate to tests of Superba™ Krill Oil dated January 6, 2011.  Neptune did not produce any of the documents underlying the January 6 tests.

4. Neptune produced a second set of documents at 10:59 p.m. on January 13.  *See* Shiels Decl., Ex. M (1/13/2011 10:59 pm e-mail corresp. from J. Liss to counsel).  This production consisted of additional communications relating to the November 2010 testing, as well as communications and an order form relating to the January 2011 testing.

5. Finally, on January 17, at 8:30 p.m., Neptune produced yet another set of documents.  *See* Shiels Decl., Ex. N (1/17/2011 e-mail corresp. from J. Oyloe to counsel).  This

---

[1] Remarkably, the Garmen witness that Neptune provided had not conducted the tests, did not have knowledge of the tests, and had never even seen the laboratory notebooks or other raw data relating to the tests.

4

production contained a set documents relating to the January 2010 testing, and a "Supplemental Expert Report" for Dr. Moore, Neptune's expert. These documents were produced the night before AKBM Antarctic was scheduled to take a deposition of Neptune's expert on the agreed-upon narrow topic of the December 29 production.

**II.  Neptune's Untimely Production is Sanctionable Under Federal Rule 16(f)**

There is no doubt that Neptune has failed to comply with the Court's scheduling order, and is therefore subject to sanctions under Rule 16(f). Rule 16(b)(2)–(3) of the Federal Rules of Civil Procedure, which authorize the Court to issue a scheduling order that sets deadlines by which discovery must be completed. Fed. R. Civ. P. 16(b)(2)–(3) (2011). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (2011). And "[d]isregarding a deadline set in a scheduling order 'undermine[s] the court's ability to control its docket, disrupt[s] the agreed-upon course of litigation, and reward[s] the . . . cavalier'" *Capitol Fed. Sav. Bank v. E. Bank Corp.,* 2007 WL 7309743 at *4 (D. Mass. 2007) (quoting *Dag Enter. v. Exxon Mobile Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005)). A violation of a scheduling order issued under Rule 16(b) may, at the discretion of the Court, result in any of the sanctions listed in Rule 37(b)(2)(A)(ii)-(vii). Fed. R. Civ. P. 16(f)(1)(C) (2011). These sanctions include preclusion. *Capitol*, 2007 WL 7309743 at *5. Additionally, a court "must order the party, its attorney, or both, to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with [Rule 16] unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2) (2001). In determining which sanctions to apply, courts tend to focus their inquiry on whether the moving party has experienced surprise and prejudice caused by the non-moving party's untimely production. *See Capitol*, 2007 WL 7309743 at *5.

Here, there is no doubt that Neptune's five untimely productions, all occurring months after the end of fact discovery, and well after AKBM Antarctic had filed its summary judgment briefing, were all made in violation of the Court's Scheduling Orders, issued on August 24 and October 14, 2010. Similarly, Dr. Moore's Supplemental Expert Report, submitted two months after the close of *all discovery*, was also in violation of the Court's Order.

### A.   Neptune did not seek leave from the Court to modify the Court's discovery deadlines

Although Neptune sought leave from the Court to extend the discovery deadlines in September 2010, this Court denied Neptune's request. D.E. 145 (Order). Neptune did not make any effort to seek leave of the Court when making any of its five untimely productions between December 29, 2010 and January 17, 2011, nor did it seek agreement from AKBM Antarctic, as required by the Court's October 13 Order. D.E. 145 (Order).

### B.   Neptune cannot show good cause

Neptune cannot offer any "good cause" for its repeated and total disregard for this Court's Scheduling Orders. Indeed, there is no justification that could explain why Neptune waited until November 2010—well after the close of fact discovery—to start conducting additional testing, 

It is a fact that Neptune received samples of Superba™ Krill Oil, as well as all of the

---

2 

raw materials used to produce Superba™ Krill Oil, in June and July of 2010. Neptune chose not to test any of these samples. *See* Shiels Decl., Ex. H (1/10/2011 e-mail corresp. between Shiels and Liss). Additionally, the untimely evidence produced on December 29 shows that the samples that were tested by Garmen in November were obtained by Neptune on August 26, 2010. ████████████████████████████████████ There was no excuse for Neptune's delay, as it had ample time to run its testing during the designated discovery period ████████████████████████████████████ The most likely explanation for Neptune's untimely testing is the fact that, in his expert report, AKBM Antarctic's witness definitively showed that the testing that Neptune had originally relied upon—the Das testing—was inaccurate and unreliable. This was confirmed by Neptune's own expert, who testified that Dr. Das had several "problems" and that Dr. Das had "misquantified" ████████████ ████████████ *See* D.E. 152 (Defs.' Mem. in Supp. of Renewed Mot. for Summ. J.) at 14–16. Neptune's desire to rebuild a case that was dismantled during expert discovery, however, does not justify its complete disregard for this Court's discovery deadlines. *See Hartford Ins. Co. v. Gen. Elec. Co.,* 526 F. Supp. 2d 250, 253 (D.R.I. 2007) ("[T]he purpose of supplementation is not to introduce wholly new opinions."); *see also Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) ("Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report.").

### C. Neptune's untimely production has surprised and prejudiced AKBM Antarctic

Neptune's untimely disclosure was far from harmless. This ongoing string of untimely productions has prejudiced and (if not excluded by this Court) will continue to prejudice, AKBM Antarctic, particularly the two new sets of tests results from Garmen Laboratories.[3] AKBM Antarctic has already invested the time, effort, and considerable expense associated with discovery, expert discovery, and summary judgment briefing, during which time Neptune's own expert admitted that the original tests that formed the very basis of this case, and which were the sole evidence upon which Neptune relied in its first motion for a continuance, were not reliable and "misquantified" ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇ *See* D.E. 152 (Defs.' Mem. in Supp. of Renewed Mot. for Summ. J.) at 14–16. The very limited discovery taken by AKBM Antarctic relating to the November 2010 tests has revealed that those tests are even less accurate, and more flawed, than the original tests. But adequately proving this before the Court requires time, depositions, and the analysis of AKBM Antarctic's own expert, all of which is occurring as AKBM Antarctic attempts to draft its reply brief in support of its summary judgment motion.

Furthermore, the timing of Neptune's production has been extremely prejudicial. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Yet Neptune sat on the test results until December 29, forty-one days later, before producing them. Similarly, Neptune produced the results of the January 2011 and Dr. Moore's "supplemental expert report" on the eve of depositions that were expressly limited, as Neptune demanded, to the December 29,

---

[3] Especially egregious is Neptune's second set of test results, produced on January 13, 2011 and relied upon in Dr. Moore's untimely Supplemental Expert report, which were not accompanied by any notebook pages or similar documentation that would allow AKBM Antarctic adequately to test the methods used and the mistakes made by Garmen for these most recent tests.

2010 production. *See* Shiels Decl., Ex. N (1/17/2011 e-mail corresp. from J. Oyloe to counsel). This pattern of surprise productions of new test results is extremely prejudicial, especially in light of the fact that Neptune's previous test results—the Das testing—had already been undermined in the course of proper discovery. *See Macullay v. Anas*, 321 F.3d 45, 52 (1st. Cir. 2003) (holding that adding a new theory of liability at the last-minute will cause prejudice).

### D. The limited discovery taken by AKBM Antarctic regarding the December 29 production has been inadequate

On Tuesday, January 4, 2011, counsel for AKBM Antarctic sent a letter to Vinita Ferrera, counsel for Neptune, stating that Neptune's December 29 production was untimely and prejudicial, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Shiels Decl., Ex. D (1/4/2010 Ltr. from Shiels to Ferrera). Counsel for AKBM Antarctic, reserving the right to preclude Neptune from relying upon any of the December 29 production, requested that Neptune provide any and all unproduced documentation relating to additional testing performed on Superba™ Krill Oil ▬▬▬▬, as well as any communications relating to such tests by January 7, the end of the week. *See id.* at 1–2. Additionally, AKBM Antarctic requested that Neptune provide depositions of: (1) the Garmen scientist who performed the new analysis, L. Eugenie Mbatika; (2) Marie-Eve Gauthier, a Neptune employee whose name appeared in correspondence relating to the new testing; and (3) Dr. Bradley Moore, Neptune's own expert. *Id.* at 2. AKBM Antarctic also requested that Neptune supplement its response to Interrogatory No. 6.[4] *Id*.

Neptune responded in half measures and unfulfilled assurances. Specifically:

---

[4] AKBM Antarctic's Interrogatory No. 6 states, "Identify any person that has conducted any inspection, testing, evaluation, or analysis of any Accused Product or Accused Process, and for each such product or process, state in detail the particular product or process inspected, tested, evaluated, or analyzed, the nature of the inspection, testing, evaluation, or analysis performed, the date of the inspection, testing, evaluation, or analysis, the result of such inspection, testing, evaluation, or analysis, and the identity of all documents reflecting those results, and any conclusions or opinions formed as a result of the inspection, testing, evaluation, or analysis."

- Neptune permitted the depositions of: (1) a witness from Garmen—Amine Allami—who had no knowledge of any of the details surrounding the November testing; (2) Dr. Moore; and (3) Ms. Gauthier. But each of these depositions was expressly limited to the documents and issues in the December 29 production, and did not cover the four subsequent productions. *See* Shiels Decl., Ex. G (1/5/2011 Ltr. from Ferrera to Shiels); Shiels Decl., Ex. E (1/6/2011 Ltr. from Shiels to Ferrera); Shiels Decl., Ex. P (1/6/2011 Ltr. from Ferrera to Shiels).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- Neptune stated that they would, but never did, confirm that all unproduced analyses of Superba™ Krill Oil conducted by, or on behalf of Neptune, had been produced. *See* Shiels Decl., Ex. H (1/10/2011 e-mail corresp. between Shiels and Liss). ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- Neptune stated it they would produce complete versions of notebook pages produced on December 29. *See* Shiels Decl., Ex. P (1/6/2011 Ltr. from Ferrera to Shiels). It never did.

- Neptune stated that it would supplement its response to Defendant's Interrogatory No. 6. *See* Shiels Decl., Ex. G (1/5/2011 Ltr. from Ferrera to Shiels). It never did.[5]

---

[5] The parties held a discovery conference on Monday, January 10, 2011 at 3:00 CST in an attempt to narrow or resolve the issues raised in this motion. The conference took place over the telephone and lasted approximately 25 minutes. Matthew Shiels, counsel for AKBM Antarctic, and Jason Liss, counsel for Neptune, participated. As discussed in this memorandum, the parties were not able to resolve the issue addressed in AKBM Antarctic's

Today, AKBM Antarctic has served its Reply Brief in Support of its Renewed Motion for Summary Judgment.  It is far too late in the case to force AKBM Antarctic to accept or take any more discovery, and what little emergency discovery Neptune permitted has been wholly inadequate to make up for the fact that AKBM Antarctic has been unable to fully test Neptune's evidence by way of fact and expert discovery.  And AKBM Antarctic has already wasted time and resources on the wild goose-chase created by Neptune's surprise productions.  Accordingly, this Court should issue the sanctions contemplated by Rule 37(c) and exclude all evidence produced by Neptune after the court-ordered discovery cut-offs.

### III.    Neptune's Untimely Production Should Be Excluded Under Rule 37(c)

The only justification that Neptune has even attempted to offer for its ongoing violation of this Court's discovery Orders is its obligations to supplement under Rule 26(e).  But, under Rule 26(e) of the Federal Rules of Civil Procedure, parties are required to supplement their responses to interrogatories and requests for production ***in a timely manner***.  Fed. R. Civ. P. 26(e)(1)–(1)(A). Indeed, Rule 37(c) of the Federal Rules of Civil Procedure requires that a party who fails to comply with Rule 26(e) may not "use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).  Rule 37(c) also gives the Court discretion to, among other remedies, "order payment of the reasonable expenses, including attorney's fees, caused by the failure." *Id*. But "the supplementation duties imposed by Rule 26 will not lightly be disturbed," and "Rule 37(c)(1) [] requires the near automatic exclusion of Rule 26 information that is not timely disclosed." *Wilson v. Bradlees of New England*, 250 F.3d 10, 19 (1st. Cir. 2001).  *See Harriman*

---

motion, *i.e.*, the impropriety of Neptune's untimely production of documents pertaining to tests performed on Superba™ Krill Oil ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, AKBM Antarctic's entitlement to documentation of all analyses of Superba™ Krill Oil conducted by, or on behalf of, Neptune, or confirmation that all such documentation had been produced, AKBM Antarctic's entitlement to complete versions of incomplete notebook pages produced with testing results, and supplementation of Neptune's response to AKBM Antarctic's Interrogatory No. 6.

*v. Hancock County*, 627 F.3d 22, 30 (1st Cir. 2010) (stating that, for violations of Rule 37, "the baseline rule is that the required sanction in the ordinary case is mandatory preclusion.") (Internal citations omitted).

### A.     Rule 26(e) does not allow Neptune to end-run the Court's scheduling orders

It is indisputable that fact discovery closed on September 17 and that expert discovery closed on November 17, in accordance with this Court's Scheduling Orders. Yet Neptune's five productions all occurred well after these deadlines had long since passed, rendering them untimely in accordance with the case law of the First Circuit. *See Wilson*, 250 F.3d at 19-20 (excluding videotapes produced on August 12, 1998 and January 14, 1999 when the deadline for all discovery had been set for July 1, 1998). That some documents in Neptune's post-deadline productions—particularly those productions relating to the two sets of Garmen testing and Dr. Moore's related "supplemental expert report"—were generated after the Court's deadlines is inapposite. In the context of Rule 26(a), "[t]he fact that a party had not actually obtained certain documents before the discovery deadline does not excuse a violation." *Capitol*, 2007 WL 7309743 at *4 (*quoting Klonoski v. Mahlab,* 156 F.3d 257, 272 (1st Cir. 1998)). And as discussed above, Neptune cannot offer any substantial justification for its actions, which were prejudicial and certainly not "harmless."

### B.     Neptune's failure to produce all documents relating to testing of any accused product ▬▬▬▬▬▬▬▬ similarly warrants sanctions

Neptune was required to provide timely production of the very types of documents that it produced well after the close of discovery. The documents produced by Neptune after the discovery deadline all fall within multiple discovery requests served on Neptune at the beginning of this case. Neptune was required to produce all documents relating to testing of Superba™ Krill Oil, under AKBM Antarctic's First set of Requests for Production Nos. 52, 82, 83, 87, 89,

and 128. *See* Shiels Decl., Ex. Q (Pls.' Obj. and Resp. to Defs.' First Set of Req. for Prod.) at 11, 16–19; Shiels Decl., Ex. R (Pls.' Obj. and Resp. to Defs.' Am. First Set of Req. for Prod.) at 2–3.

███████████████████████████████████████████████████████████

████████████████████. *See* Shiels Decl., Ex. Q (Pls.' Obj. and Resp. to Defs.' First Set of Req. for Prod.) at 11, 16–17; Shiels Decl., Ex. R (Pls.' Obj. and Resp. to Defs.' Am. First Set of Req. for Prod.) at 2–3. Even if Neptune could excuse its untimely document production (and it cannot), it is not allowed under the Rules to select the documents it produces, while withholding others.

Neptune has not provided full discovery regarding the untimely produced documents and testing in general and should be precluded from relying on these test results. Accordingly, this Court should preclude Neptune's untimely evidence and expert report and award AKBM Antarctic reasonable expenses, including attorney's fees relating to the emergency discovery necessitated by the December 29 production.

**IV.     Conclusion**

For the reasons set forth above, AKBM Antarctic respectfully moves the Court to preclude Neptune from relying upon (1) any of the documents produced after the discovery cut-off of September 17, 2010, and (2) the supplemental expert report of Dr. Bradley Moore, which relies entirely upon Neptune's untimely production. AKBM Antarctic further requests that the Court grant reasonable expenses—including attorney's fees—and any other relief that the Court deems just.

Dated: January 21, 2011

Respectfully submitted,

/s/ *Matthew J. Shiels*
Mark A. Pals, P.C. *(pro hac vice)*
Amanda Hollis *(pro hac vice)*
Matthew Shiels *(pro hac vice)*
Elizabeth Nemo *(pro hac vice)*
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
mark.pals@kirkland.com
amanda.hollis@kirkland.com
matthew.shiels@kirkland.com
elizabeth.nemo@kirkland.com

Peter E. Gelhaar (BBO# 188310)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880
peg@dcglaw.com

*Attorneys for Defendants and Counterclaim Plaintiffs*

**CERTIFICATION PURSUANT TO LOCAL RULES 7.1(a)(2) AND 37.1**

In compliance with Local Rules 7.1(a)(2) and 37.1, I hereby state that counsel for AKBM Antarctic has conferred in good faith with counsel for Neptune in an effort to narrow or resolve the issues raised in this motion.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2011, a true and correct copy of the foregoing **AKBM Antarctic's Memorandum In Support Of Its Motion To Preclude Reliance On Untimely Produced Documents And Expert Testimony** filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on January 21, 2011.

/s/ *Matthew J. Shiels*